WAYNE W. and GOLDIE A. CARMICHAEL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
CARMICHAEL v. COMMISSIONER
Docket No. 1484-75.
United States Tax Court
T.C. Memo 1976-272; 1976 Tax Ct. Memo LEXIS 133; 35 T.C.M. (CCH) 1189; August 24, 1976, Filed Wayne W. Carmichael, pro se. Willard N. Timm, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined the following deficiencies in petitioners' income taxes: Year
Amount
1969
$ 379.25
1970
701.32
1971
1,071.47
These deficiencies include self-employment taxes for 1969-1971, in the respective amounts of $379.25, $405.72, and $585, which are not in dispute. Petitioners, husband and wife, were residents of California when they filed their petition herein. The Commissioner made various adjustments, of which only one item -- relating to a $7,500 loss -- is now in controversy. A stipulation of facts filed by the parties is incorporated herein by this reference. On or about July 30, 1965, Mr. Carmichael ("petitioner") entered into a so-called franchise or lease service agreement with Creative Audio Visual Advertising, Inc. (the "franchisor" or "Creative"), in respect of which he made payments to the franchisor aggregating $7,500 as follows: August 2, 1965
$2,500.00
September 20, 1965
2,500.00
October 11, 1965
2,500.00
$7,500.00
Before any substantial business *135 was generated under the franchise agreement Creative "filed bankruptcy". However, it was not until 1969 that Mr. Carmichael concluded that his $7,500 claim against Creative would not be satisfied from the bankruptcy assets. There is a strong suggestion that he may have been defrauded of that amount. Petitioner claimed the $7,500 loss as a bad debt, taking deductions therefor in the amounts of $2,000 for 1969, $2,000 for 1970, and $3,500 for 1971. The Commissioner disallowed the loss as a bad debt, and, instead, treated it as a business loss for 1969, thus accepting petitioner's determination that the loss occurred in 1969 and that his $7,500 investment in the franchise was no longer recoverable. The consequence of such treatment was a business loss deduction of $7,500 for 1969 as well as carrybacks to 1966, 1967 and 1968, which were of no tax benefit to petitioners (apparently because the loss carrybacks offset income which would otherwise have been offset by the personal exemptions allowable for these years. Section 172(d)(3), I.R.C. 1954, section 1.172-3(a)(1)(i), Income Tax Regs.). But even though the carryback of the loss to the earlier years did not reduce petitioners' *136 actual tax liability for those years, the statute requires that the loss available to be carried forward to succeeding years be reduced by the taxable income (as modified by section 172(d)) of each of those earlier years. Section 172(b)(2), I.R.C. 1954; section 1.172-4(a)(4), Income Tax Regs. And there is no evidence in the record before us to contradict the Commissioner's determination that the entire loss was used up in reducing petitioners' taxable income for the years 1966 through 1969. Although it is plain to us that petitioner suffered a $7,500 loss, we cannot find any error in the Commissioner's manner of treating it. It was not a "bad debt", and certainly could not be deducted piecemeal as petitioners attempted to do in their returns for 1969, 1970 and 1971. And even if what petitioner suffered were a theft loss, as was suggested by Mr. Carmichael in his testimony before us, the deduction allowable in respect of a loss of that type would be no greater than that allowable in respect of a business loss of the same amount. Section 172(d)(4)(C), I.R.C. 1954; section 1.172-3(a)(3)(iii), Income Tax Regs.
Therefore, to reflect the various agreements of the parties, including *137 those reached during the trial of this case, Decision will be entered under Rule 155.